IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CONNIE WITHEROW,                              :

                            Plaintiff,

        -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.      :

Case No. 3:07-cv-218

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy.  42 U.S.C. §423(d)(2).

2

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous

employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on September 22, 2003, alleging disability from August 1, 2003, due to scoliosis, arthritis, and fibromyalgia. (Tr. 47-49; 385-87; 60). Plaintiff's applications were denied initially and on reconsideration. (Tr. 3134, 36-38; 389-92; 394-97). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 407-40), who determined that Plaintiff is not disabled. (Tr. 10-24). The Appeals Council denied Plaintiff's request for review, (Tr. 4-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she has severe thoracolumbar scoliosis, degenerative disc disease, and left knee arthritis, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 23, finding 3). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 24, finding 4). Judge Padilla then found that Plaintiff is able to perform her past relevant work as an administrative manager as that job is customarily performed. *Id.,* finding 6. Judge Padilla found in the alternative that Plaintiff has skills that are transferrable to as many as 9,000 sedentary, unskilled jobs and that there is a significant number of unskilled light and unskilled sedentary jobs that Plaintiff is capable of performing. *Id.,* finding 8. Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 24).

Plaintiff has a history of scoliosis and in 1970 she underwent a spinal fusion surgery in an attempt to treat that condition. (Tr. 86-95). In 1987, Plaintiff was hospitalized for treatment

4

of a severe headache with focal neurological signs. (Tr. 96-107). Plaintiff was treated and discharged with the diagnoses of migraine headaches, personality disorder, and possible narcotic abuse. *Id.* Plaintiff was hospitalized in November, 1991, for treatment of drug dependency and drug withdrawal syndrome. (Tr. 119-25). During that hospitalization, it was noted that Plaintiff was an alcoholic and prescription drug addict. *Id.* Plaintiff left the hospital against medical advice. *Id.*

Plaintiff consulted with Dr. Lehner on June 3, 1996, at which time he reported that she had scoliosis with a history of a spinal fusion, complained of back pain, was reluctant to move her back, and that she had a thoracic hump. (Tr. 164-65). Dr. Lehner also reported that x-rays indicated no significant degenerative changes along the area of the lumbar curve. *Id.*

Plaintiff has been treated numerous times in the emergency room for complaints of, *inter alia,* back pain. *See, e.g.,* Tr. 175-212.

Examining psychologist Dr. Schulz reported on March 23, 1999, that Plaintiff reported to him that she had never been treated in a drug or alcohol program, that the last time she used alcohol was in 1994, and that she has never misused any prescription medications or used illegal drugs. (Tr. 220-26). Dr. Schulz also reported that Plaintiff completed two years of business college, used a cane, had normal speech and an appropriate and congruent affect, and that her mood was euthymic. *Id.* Dr. Schulz noted that Plaintiff was oriented, had an average memory and a normal ability to abstract, and that her diagnosis was dysthymia. *Id.*

Over time, Plaintiff has undergone numerous objective medical tests which have revealed, *inter alia,* scoliosis, degenerative changes of the lumbar dorsal spine, and carpal tunnel syndrome. *See, e.g.,* Tr. 246-48.

Plaintiff received treatment from pain specialist Dr. Dahlquist during the period

5

October, 1997, through February, 1999.  (Tr. 249-88).  When she first examined Plaintiff, Dr. Dahlquist reported that Plaintiff had significant tenderness of the trapezius muscles and in the thoracic and lumbar paraspinous muscles bilaterally, a normal neurological examination, and no specific areas of trigger point tenderness.  *Id.*  Dr. Dahlquist opined that Plaintiff's diagnosis was fibromyalgia and she treated Plaintiff with various modalities including medications, massage, and relaxation techniques.  *Id.*

Dr. Gardner has treated Plaintiff since December, 1996, and on October 27, 2003, he reported that Plaintiff's diagnoses were compound thoracolumbar rotoscoliosis, inflammatory osteoarthritis of the spine, hyperthyroidism, and opiod dependency, that she has had pain in her spine since his initial evaluation of her in December, 1996, and that she had been under Dr. Dahlquist's care from about 1998 until late 2003.  (Tr. 294-98).  Dr. Gardner also reported that Plaintiff had paravertebral muscle spasms and tenderness in the cervical, thoracic, and lumbar areas, decreased ranges of spinal motion and minimal benefit from blocks and high dose narcotic analgesics, and that she continued to complain of pain which was severe at times.  *Id.*  Dr. Gardner noted that Plaintiff was not able to bend, stoop, lift, tug, pull more than 5 pounds, ambulate or stand for periods of more than 30 minutes, sit for more than 30 minutes without moving or getting up, and that in spite of taking narcotics, she did not appear lethargic or confused and remained mentally sharp.  *Id.*

On March 31, 2006, Dr. Gardner reported that he had seen plaintiff about once a month since at least January, 1997, that her diagnoses were thoracolumbar back pain, compound thoracolumbar scoliosis, and spinal degenerative joint and disc disease, that her diagnoses were confirmed by MRI, reduced ranges of motion, and scoliosis of the lumbar and thoracic spines.  (Tr.

6

370-77). Dr. Gardner also reported that Plaintiff had persistent and chronic pain in her entire spine with radiation into both legs which was aggravated by walking, sitting, and when supine, her pain has contributed to a depressive syndrome, constantly interfered with her attention and concentration, and that her prognosis was guarded. *Id.* Dr. Gardner opined that Plaintiff was able to sit for 20 minutes and stand and walk each for 30 minutes, needed to include periods of walking during an 8-hour workday, could not get through a workday on a sustained basis without lying down, should use a cane or other assistive device, and that she could occasionally lift and carry up to 10 pounds. *Id.* Dr. Gardner also opined that Plaintiff' symptoms would cause her to be absent from work three or more times a month. *Id.*

Examining chiropractor Dr. Konicki reported on April 4, 2006, that Plaintiff exhibited a dropped right hemipelvis, dropped left shoulder, and dropped right ear when standing erect, a positive Adam's test with an increase in the right thoracic ribs, an increase in thoracic kyphosis, decreased ranges of motion of the spine, that she was unable to walk on her heels bilaterally, and that she could walk on her toes bilaterally with trouble. (Tr. 278-83). Dr. Konicki also reported that Plaintiff had increased sensation left L5, decreased S1 dermatomes, normal motor strength, palpable myofascitis in the upper trapezius muscles, right levator scapular, right rhomboid, and quadratus lumborium, and that she was tender to palpation along the left C2-5 and right sciatic notch. *Id.* Dr. Konicki noted that Plaintiff had a positive Phalen's test bilaterally, positive Tinel's tap bilaterally, grade 4 motor weakness in the left, and positive tender point examination for fibromyalgia in all points except left trapezius, left gluteal, and left greater trochanter with tenderness to palpation of the remaining 15 points. *Id.* Dr. Konicki opined that Plaintiff's diagnoses were dextroscoliosis T4-L2 measuring 36 degrees compared to 37 degrees in 1999 and 41 degrees

in 2002, fibromyalgia, suspected bilateral carpal tunnel syndrome, short left leg, mild degeneration of the left medial knee compartment, mild impingement left L5-S1 neural foramen, and severe disc degeneration L2-3. *Id.* Dr. Konicki opined that Plaintiff was unable to sit for more than one-half hour at a time, walk or stand more than ten minutes at a time, was able to use both hands for short periods of time, was unable to engage in a work environment as she could expect increasing fatigue due to her myofascitis, fibromyalgia, and scoliosis, and that her condition was complicated with chronic left knee pain, suspected bilateral carpal tunnel syndrome, and general deconditioning. *Id.*

In an undated report, Dr. Gardner noted that since March, 2006, Plaintiff's condition had worsened, she seemed to be developing a true inflammatory arthropathy as evidenced by clinical extremity joint inflammation and stiffness, that there was laboratory evidence of an inflammatory process, it was too early in the course of the process to delineate specifically the nature of the disease, she was experiencing further difficulties with pain control and use of her hands, legs, and feet, and that her condition could be expected to be permanent and probably worsen over time. (Tr. 384).

In her Statement of Errors Plaintiff alleges that the Commissioner erred by rejecting Dr. Gardner's opinion, failing to give good reason for rejecting Dr. Gardner's opinion, and by rejecting her allegations of pain. (Doc. 8).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social*

8

*Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

As noted above, Dr. Gardner has been Plaintiff's long-term treating physician, treating her since at least 1996. Dr. Gardner has opined that Plaintiff's residual functional capacity is inconsistent with an ability to perform any work activity on a sustained basis. His opinion is supported by his objective clinical findings. Specifically, Dr. Gardner has documented the presence of muscle spasms, tenderness in the cervical, thoracic, and lumbar spines, decreased ranges of motion, joint inflammation and stiffness, and an obvious spinal scoliosis. In addition, Dr. Gardner's opinion is supported by the objective medical test results including x-rays and laboratory findings.

Further, Dr. Gardner's opinion is supported by Plaintiff's long-term treatment with Dr. Dahlquist as well as the report from examining chiropractor Dr. Konicki.[1]  In contrast, the only evidence which arguable opposes Dr. Gardner's opinion are the opinions of the non-treating, non-examining reviewing physicians.  (Tr. 289-93).  Under these circumstances, the Commissioner erred by rejecting Dr. Gardner's opinion that Plaintiff is disabled.  Therefore, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).  If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted);  *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the essential issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits.  Specifically, as noted above, long-time treating physician Dr. Gardner has opined that Plaintiff is disabled and his opinion is supported

_____

[1]  The Court notes that a chiropractor is not an acceptable source of medical evidence.  20 C.F.R. §§404.1513; 416.913.  The Commissioner is not required to give controlling weight to a chiropractor's opinion nor is he required to adopt a chiropractor's opinion.  *Walters v.  Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005). However, the Court also notes that SSR 06-03P which was issued effective August 9, 2006, clarifies how the evidence from sources who are not "acceptable medical sources." SSR 06-03P, 2006 WL 2329939 (S.S.A.) may be considered. While the ruling notes that information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at *3.

by the objective clinical findings and the objective test results.  In addition, Dr. Gardner's opinion

is consistent with the other evidence of evidence.  Finally, the only evidence which arguably

opposes Dr. Gardner's opinion is the opinions of the reviewing physicians.

It is therefore recommended that the Commissioner's decision that Plaintiff is not

disabled be reversed.  It is further recommended that this matter be remanded to the Commissioner

for the payment of benefits consistent with the Act.

March 20, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written
objections to the proposed findings and recommendations within ten days after being served with
this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically
extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays)
because this Report is being served by one of the methods of service listed in Fed.R.Civ.P.
5(b)(2)(B), (C), (D) and may be extended further by the Court on timely motion for an extension.
Such objections shall specify the portions of the Report objected to and shall be accompanied by
a memorandum in support of the objections.  If the Report and Recommendations are based in
whole or in part upon matters occurring of record at an oral hearing, the objecting party shall
promptly arrange for the transcription of the record, or such portions of it as all parties may agree
upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise
directs.  A party may respond to another party's objections within ten days after being served
with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit
rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474
U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).